Good morning, John Ballas. On behalf of the petitioner Pedro McPhearson, I'm intending to reserve two minutes for rebuttal. Sure, I'll try and help you. Pedro McPhearson was mistakenly released from custody in Los Angeles County Jail in 1999 when federal authorities mistakenly failed to place a detainer on him. After his release, over the next nine and a half years of his life, he married the mother of his children, he worked as a UPS truck driver, he paid taxes all under his true name, and he bought a home. So essentially he was hiding in plain view. But that being said, maybe you can just jump to what, how was Mr. McPhearson harmed by the government's failure to incarcerate him for some ten years? Didn't he benefit by receiving credit for his time at Liberty plus good time credits? Well, that is certainly a benefit by having credit for the nine and a half years that he was released. But the question is, under either the due process test or the estoppel common law question, is whether his reincarcerating now, after all that time out, after the back being with his family, is inconsistent with the fundamental principles of liberty and justice. But if they hadn't made the mistake, he would have been away from them all this time and what he's doing right now. So... And I think there's two factors in this case that make it particularly egregious and put it more in the line of the Johnson case, where this Court has filed a due process violation, compared to the Martinez or Green cases. One is the length of time that he was out, the nine and a half years. But he got credit for that, didn't he? And he did get credit. And the second egregious fact that I think puts it beyond the mere negligence or simple neglect is that in July 2007, when they realized the mistake and the they asked the L.A. County U.S. Marshal, L.A. U.S. Marshal's Office for help in capturing him and arresting him, and they knew his address, and he lived openly, they did nothing about that. So how did he get hurt by that? He's still got another year and a half plus good time credit. Well, I don't think that's the question, that he's hurt by having, he got some benefit and we're asking for greater benefit. So he got to, did they have to give him credit for time served on that? Yes. Under what authority? The case law is very clear on the credit for time at liberty as a common law issue. But the case law is also very clear that in addition to that, there is a due process principle against further reincarcerating someone after such a length of time and when the conduct by the government is more than just simple neglect or mistake. Well, let's talk about it. I mean, the government, I think we could probably all agree that they're incompetent on many levels, right? And so if this were a private individual doing it, maybe it would be gross incompetence. But the government has all of this work to do, and when they're processing all these people, when someone fails to put a hold on someone, and then when they have all these warrants to serve and they don't have enough people to do it, why isn't that just simple negligence? It's … Well, the district court made a finding that it was more than simple neglect, simple negligence. But is it shocks the conscience more? I believe it does. I believe it … Should it shock our conscience if he got the 9 1⁄2 years of credit, though? Doesn't that ameliorate to some degree your argument that it's manifestly unjust to return him to custody and require him to serve the balance of his sentence? Well, first I want to preliminarily emphasize that I don't believe that the necessarily the shock to conscience test of Connie V. Lewis is applicable. Well, if it is, that goes back to the first question, I think, that Judge Callahan asked, and that is, how was he affirmatively harmed in the same way that the plaintiff's decedent in Lewis was harmed when the sheriff's vehicle ran over him in the high-speed shade? Well, he is harmed because he was out for 9 1⁄2 years with his family, adjusting to society, doing everything he's … Getting to be a dad, watch his kids get raised, get to go to Little League games, and if he were in prison, they don't let you out for all of that stuff. He would be in prison, and he … Right. And that's what the case law talks about, is how unjust it is when you have back into society, not only for yourself, but for your family members and everything, and then to be taken away and reincarcerated when it's not more than just a neglectful situation. I believe it falls more in the line of shocking the conscience, where I don't believe that … Let me just talk for a minute on the shocking the conscience standard. This Court … There has been some suggestion that the case law of the Ninth Circuit does not properly apply the County v. Lewis test. My position is that under this Court's law, like Miller v. Gammey, the Ninth Circuit and bank decision, you have to apply the case law of the circuit unless there's Supreme Court intervening authority that is clearly irreconcilable with the Ninth Circuit cases. Well, but even if the waiver of jurisdiction theory continues to apply, the second element has got to be still that there be more than simple negligence, more than simple neglect. It doesn't specify how much more. That's a fact-intensive, case-specific determination, as I understand the case law. And then you have the issue of, is the harm such that it would justify the kind of relief granted? And I'm not … Assuming that that continues to apply and the Ninth Circuit case law continues to apply, why is that going to lead us to a different result than a higher standard might? Well, even … The district court found that the government's conduct involved more than simple negligence. And I think that finding and the circumstances and facts of this case justify a finding under the waiver test of a due process violation. The district court described it in terms of it's almost impossible to understand where Pedro McPherson is in a situation where he was sentenced to 327 months by the Northern District of Texas on cocaine trafficking charges. The U.S. Attorney's Office or the U.S. Marshal's Office knows where he is residing and working and takes absolutely no efforts, no steps to try to arrest him. And that, it's our position, it goes beyond mere negligence and is sufficient under the standard. It distinguishes it from Martinez and Green, which refer to those cases as mere negligence or simple negligence, and more like Johnson, which is more affirmative misconduct. So is it your position that there doesn't have to be a case-specific finding on how much more than simple negligence is required? It's enough if it is just more? Well, it's clearly there's a line drawing based on the totality of the circumstances on whether or not. And my two factors are the nine and a half years out and the government knowing where he was for a year and a half and not caring and not bothering to go to arrest him. How do you distinguish our decision in the United States versus Martinez, where he was out for seven years? And we found no due process violation. Two things. Two years more here, nine and a half rather than seven and a half. And second, there they referred to it as only simple negligence. The person was out on bond. When the mistake was realized after seven and a half years, they put him back in custody. Here, after seven and a half years, when they realized he was out of custody, they didn't put him back into custody. They issued a warrant for his arrest and nothing happened for another year and a half. So you think that the distinguishing factor is the failure on the part of the marshals in 2007 to actively seek his whereabouts to execute the warrant? The marshals taking absolutely no steps to arrest him and the two additional years beyond Martinez. As far as I can tell from Martinez, he was out the whole time because he was supposedly waiting for the Bureau of Prisons to give him a facility to surrender. And he lived at the same residence for the entire time. So apparently nobody was looking for him either. So I'm still trying to figure out why this is different from Martinez. Well, the difference is in the first seven and a half years, they didn't realize there was a mistake. The authorities didn't realize there was any mistake. Here, even when they realized... So you would agree then that the first seven years would be covered by Martinez? The first seven years are more like Martinez. I would agree with that. I know he's out of time. Can I ask one more question? Yeah, yeah, absolutely. Of course. So is there an implication that we should be concerned about or even just mindful of, if we were to find, as you want us to, that reincarcerating Mr. McPherson violated his substantive due process rights, would he then have a fair amount of money that he has spent in prison since he's been reincarcerated if we removed the heck bar by granting his habeas petition? You know, I try to avoid civil law whenever I can. That's an interesting... We don't have that alternative, so sorry. Yeah, that's an interesting question that... It's a way of framing the culpability question, because if deliberate indifference were to be the standard there, is that the same? Does it follow as the night from day that if we find a substantive due process violation here, that there would be liability for a Bivens claim? At least for the last year and a half, distinguishing it from Martinez. Five years that he's been back in, because what we would be saying is that that was wrongful reincarceration. Just giving you credit for the time. Well, I think that's a difficult question for a number of reasons. One is that so part of the reason it... Well, part of the reason... I don't think that's the issue here. And part of the reason that the delay could be explained for other factors that would not give rise to a Bivens claim. For example, they stayed the action in the eastern district of California for him to go back on a 3582C motion to reduce his sentence when the crack cocaine guidelines changed. And as part of that, there was some effort to try to raise this claim over there, but it really wasn't a proper procedure. So there's probably a number of reasons that he wouldn't, he may not have a good claim because he agreed to stay the action and to present it to that district. Okay. You are out of time. Let's hear from the government. I'm a little shorter. Good morning, Your Honors. My name is Nirav Desai, and I represent the respondents in this case. Although the conduct in this case by the incarcerating officials was neglectful, that conduct did not rise to the level of finding a waiver or estoppel under this Court's decisions, nor did it shock the conscience under the standard from County of Sacramento v. Lewis, and as applied in Hawkins v. Freeman by the Fourth Circuit, or Bonebrake v. Norris in the Eighth Circuit. I was just going to say, should we also be concerned about creating a circuit split if we rule in McPherson's favor? Your Honor, it's unclear that County v. Lewis created a new rule of constitutional law. The way it's been interpreted in Hawkins and in Bonebrake is that the Lewis case informs the standard of waiver and estoppel. Well, in Hawkins, I guess the Hawkins Court But Freeman was decided after County of Sacramento v. Lewis, so either the Fourth Circuit was unaware of it, or they didn't see it as an obstacle. So would we be creating a circuit split if we ruled in Mr. McPherson's favor? Potentially, Your Honor, in the sense that the standard in the Ninth Circuit would not incorporate the conscious shocking standard that other circuits have applied. Those other circuits, the Eighth Circuit and the Fourth Circuit, have incorporated the conscious shocking standard into their analysis of these questions. Hawkins v. Freeman, the en banc panel in that case, really moved the question squarely into the Lewis standard, so that that standard really informs the analysis of whether there's a waiver, and essentially jettisoned the estoppel doctrine altogether. Is the answer yes, we might be creating a circuit split? Yes, Your Honor. I apologize for that. Your Honor, I'm sorry. Well, my question was on appellant's counsel said that there's a finding of more than simple negligence. Is that true in the record from your perspective? Your Honor, the Respondents would contend that there wasn't a finding of more than mere negligence, that the district court heavily scrutinized the Respondent's position in this case over the course of several hearings, thoroughly examined the case law, and ultimately found that the conduct was not so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice. However, the Respondents would contend that there wasn't an actual factual finding of more than mere negligence. And on that point, the cases from this circuit are instructive on in terms of what exactly is mere neglect and what is more than that. Specifically, in Green v. Christensen, the prisoner in that case was serving State and Federal sentences. The State, he started serving his time first in the State, and the State reached out to the U.S. Marshals Service and asked, would you like to place a detainer on this individual? And the Marshals Service affirmatively stated, we do not wish to place a hold on this individual. And this Court held that that was mere neglect at worst. In U.S. v. Martinez, similarly, the facts of that case are instructive here. In Martinez, he was not ordered to surrender, given a surrender date from the Court, and four years prior to his recapture, his bond was exonerated. The FBI learned that he had not served his time a year prior to seeking an order to incarcerate him, and then ultimately a year later sought the order, obtained the order, and Martinez was incarcerated. So is this just sort of garden-variety government negligence? And, Your Honor, I can't say that the conduct here is ideal in any sense. But in terms of assessing whether there's more than simple neglect, this Court's cases are instructive in terms of what qualifies as more than simple neglect. Did you have to give credit for time served? Well, Your Honor, the Bureau of Prisons ultimately made that decision and gave credit for time served. Under this Court's decision in Clark v. Floyd, there's a doctrine that no matter which — no matter which incarcerating official failed to place a detainer, the credit for time served would be granted. Now — Even good time credit? The good time credit was ultimately decided by the Bureau of Prisons. The case law is not clear that good time credit should be awarded as — under the credit-for-time-at-liberty doctrine. Now, the credit-for-time-at-liberty doctrine does have its underpinnings in cases involving due process violations. So I don't necessarily agree that it's purely a common law issue. But in terms of the harm, Mr. McPherson did receive time for the entire period he was at liberty. Well, if he had gone in when he was supposed to, is he going to get out any later now based on what's happened? Your Honor, he received a 262-month sentence in 1999. So I don't believe so, Your Honor. So he got a reduction later. He was able to go back and get the benefit of some change in the guidelines, I guess, under, what, crack cocaine and — Yes, Your Honor. So he got a reduction there. Would he have been entitled to that reduction if he had gone in when he was — you know, if everything had gone as planned, that there had been no — you know, he'd shown up when he was supposed to? Will he get out any later? No, Your Honor. I believe he would still be entitled to that reduction, whether he was in custody or not. But a release date would have been the same. They set a release date when he goes in. And your answer is the release date would have been the same because they gave him full credit for time served and good time credit. Correct, Your Honor. Okay. Does the fact that there is sort of a multilayer series of failures to act when action should have been taken — And so we've got the first failure to issue the detainer, followed by a second and separate set of failures to act on the warrant. And they don't do anything. At least in Martinez, somebody actively sought reincarceration. In this case, the record seems to suggest that they waited for him to be dropped in their laps by the fortuity of the traffic stop by local law enforcement, neatly tied up with the proverbial bow, and presented as a, here, freebie. Well, Your Honor, that's a similar argument to the one raised in Martinez as to the multilayered conduct. And in Martinez, as I mentioned earlier, the authorities, the Federal Government, learned that Martinez had not been ordered — had not surrendered. And there waited a year to obtain an order to have him surrender. In that sense, the Court considered, again, a multilayered series of failures and rejected that argument, finding that there was mere neglect in that case. What if the district court had found in favor of the appellant and you got — this is a government appeal. If the district court had found that this was gross negligence, would we have to affirm then, too? Well, Your Honor, the review would be de novo. But if the district court had made findings such as gross negligence, I would have a big rock to push uphill to convince this panel that there was clear error. But that wasn't the case in the district court here. Right. I'm just wondering if it's one of those cases that is won or lost in the district court, and we would be in a position of affirming either way, depending on what the district court had found. Well, Your Honor, these questions are fact-intense. And the district court is in the best position to make factual determinations on the record. And that would influence the — I see my time is — No, go ahead. I'm sorry. It's your answer. And the district court's findings would likely heavily impact what the court of appeals could do in review. I take it what happened here was that when the warrant was issued and the marshal in Los Angeles was notified, an entry was also made, what, in the National Crime Information Center computer, that there was an outstanding warrant. And it was when the L.A. County deputy ran his name at the traffic stop that he learned of the outstanding warrant. I assume that that's what happened. I have not reviewed the actual entry, but there was a collateral lead sent from the U.S. marshal's office in Texas to the U.S. marshal's office in the Central District. But that's not what resulted in his arrest or incarceration. It was because of the fact, as I read the record, he got stopped by a sheriff's deputy. Yeah. And it's not uncommon to run the name of the driver to see if there's any warrants outstanding. And if the marshals had entered him in NCIC, the L.A. County deputy would know that pretty quickly. And apparently they did do that. Yeah. Isn't that how he got arrested? Yes, Your Honor. Mr. McPherson was recaptured during a routine traffic stop. It had nothing to do with what the marshal's service was doing. So I presume that his name and information was entered into NCIC. I simply haven't reviewed a document that suggests that. Okay. Your Honor, my time is running short. But in terms of simple neglect, I think this Court's decisions in Green v. Christensen and United States v. Martinez are instructive in terms of what it means to exceed the standard of simple neglect. The district court carefully considered this Court's case law, heavily scrutinized the Respondent's position in this case, and determined that there was no waiver or estoppel no matter the standard applied. And the Respondents would ask that the Court affirm the district court's decision. Thank you, Your Honors. Thank you very much. Counsel, I'll give you a minute on rebuttal. I just wanted to point out that the citation and the record where I was saying that the district court made a finding that it was more than simple neglect is on excerpt of record page 9, page 9 of the judge's. 8 and 9. Page 9. Page 9. Where he said that the government's conduct over the years amounted to more than simple neglect. And on the. . . Well, but that's not an express finding that it was grossly negligent, is it? Well, I think it's a finding that it was more than negligence. Well, I mean, there's a continuum, right? Is there not? Simple negligence, gross negligence, deliberate indifference, and intentional harm. That's how I think of it. Am I wrong? Sure, but even under those gradations, if it's more than negligence, I think the next step up is. . . Well, I think your point is that you didn't misrepresent the record, that those words were set, right? Yes, and that's. . . I just want to point out where it was. Yes, I appreciate that. And the last point the court had on the circumstances of his arrest, there's really not much in the record about that. We actually asked the subpoena of the arresting officer. The district court denied it as not being relevant, and I don't think the record really shows that. So you don't know whether his name was in NCIC or not? Well, part of my understanding was that there was, even at the time of his arrest, they did not pick it up in the standard check when they call in someone's name. And that's why we wanted to call the officer, and the officer had to actually foul it up. Well, what was the basis for the car stop? It was some traffic violation. Yes, so, I mean, we didn't all just fall off the turnip truck. When you get stopped on a routine traffic stop, they run your name. So something came up on him. Yeah, I'll just tell you, my client alleged that it did not, and that the person made some further follow-up call, and we wanted to get the circumstances, and they never came out. Well, but what that suggests to me is the marshals may have been negligent in not issuing a detainer, but once the warrant issued in 2007, somebody must have made an entry into some kind of a data system or else there's no other way the L.A. County deputy could know. I agree that that's the standard. I mean, you would expect, but — Well, I don't know how else a local law enforcement officer would know that there's a Federal warrant outstanding. There's no suggestion that at that point Mr. McPherson said, gosh, you found me. Here's what I did. No. Well, I think Mr. McPherson said, why am I being arrested? It would have to be because there's an outstanding warrant for your arrest. Well, the circumstances never came out because that's not in the record. Okay. Well, I'm not sure we need to get too hung up on it, but thank you very much, Counsel Lee. The case just argued is submitted. The next case on the calendar, Begun v. Scottsdale Insurance Company, is ordered submitted on the briefs, and we will hear argument in basalite concrete products and Pacific Coast Building Products v. National Union Fire Insurance Company of Pittsburgh, No. 13-16223.
judges: Rosenthal, Tallman, Callahan